# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| METANOIA AND THE CITY OF NORTH CHARLESTON, | C/A No.: 2:21-cv-01291-DCN |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| XL INSURANCE AMERICA, INC. AND USI INSURANCE SERVICES NATIONAL, INC., | **NON-JURY TRIAL REQUESTED** |
| Defendants. | |

## THE PARTIES

1. Metanoia ("Metanoia") is a local non-profit community development corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Charleston County, State of South Carolina.

2. The City of North Charleston ("City") is a body politic of the State of South Carolina in Charleston County, South Carolina.

3. XL Insurance America, Inc. ("XL") is a for-profit corporation in the business of insurance which insured Metanoia and the City for a specific property and project which is the subject of this case. Upon information and belief, XL is organized in the State of Delaware and has its principal place of business in Connecticut.

4. USI Insurance Services National, Inc. ("USI") is a for-profit corporation in the business of insurance which is organized in the State of North Carolina with its principal place of business in North Carolina, but which transacted business in Charleston County, South Carolina. In this instance, USI acted as the producer for XL under the policy of insurance which is at issue in this case.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper in the United States District Court based on 28 U.S.C. §1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.     The United States District Court for the District of South Carolina as personal jurisdiction over the parties.

7.     Venue is proper in the United States District Court for the District of South Carolina, Charleston Division pursuant to 28 U.S.C. §1391(b) and Local Civil Rule 3.01 as a substantial part of the events, acts and omissions giving rise to this claim occurred in this Division, Metanoia and the City are located in the Division, and the policy of insurance was issued for property and a project within the Division.

8.     This matter is related to a matter that has been filed by XL in this District 2:21-cv-00478-DCN for declaratory relief.  However, that matter has not yet been properly served by XL pursuant to Rule 4, FRCP at this time.  It is necessary also to join additional parties as was done here.  To the extent that these matters need to be consolidated or the prior filed action needs to have parties substituted in order to accord complete relief or the previous case needs to be dismissed and XL can seek its declaratory relief in this case, we can take those issues up with the Court.  The Plaintiffs request a status conference with the Court soon after filing so the parties can align the pleadings properly.

## THE FACTS

9.     Metanoia is a local non-profit community development corporation which was incorporated in 2003 with a focus on assisting neighborhoods and communities in need by establishing quality housing, generating economic development and building leaders.

10. A primary focus of Metanoia's efforts is to provide a safe and nurturing place for children after school and an economic re-energizing of the Chicora-Cherokee neighborhood of North Charleston, South Carolina – a neighborhood identified for having the highest concentrations of child poverty in the state.

11. Metanoia generates revenue by fundraising in the private and public sector by seeking donations and grants.

12. Beginning in 2016, Metanoia began to undertake its largest project to date, the renovation and repurpose of the approximate 58,000 sf Old Chicora school located on Chicora Avenue in the City of North Charleston ("School" or "Project").

13. The School was originally constructed in stages from the 1930's to the late 1950's. Due to its age, its type and period significance to the Equalization Period in the United States school systems, the S.C. State Historic Preservation Office and the U.S. National Park Service approved the building as a Certified Historic Structure.

14. The Project is large scale and expensive. It involves taking the School which is not in use and renovating it into a performing arts center, an early childhood learning center, affordable artist work studios and an educational space for the community, which would be owned by Metanoia. At the time of the issues giving rise to this claim, the School was owned by the City and the City and Metanoia entered into a series of contracts and agreements to include lease options and purchase options which gave Metanoia rights and obligations to the School. As of April 15, 2021, Metanoia owns the School.

15. Metanoia began working on the Project in approximately 2016. Metanoia raised approximately $4,806,825.00 in cash and pledges specific to the Project.

16. Metanoia contracted with various consultants, an architect and Trident Construction, LLC ("Trident") to prepare the plans and specifications for the large-scale Project.

17. Metanoia secured two New Market Tax Credit allocations from two Community Development Entities totaling $17,000,000.00 in New Market Tax Credits which are highly competitive financial tools from the U.S. Department of Treasury for entities such as Metanoia who are working in impoverished census tracts and who can demonstrate certain community outcomes.

18. Metanoia was able to attract an equity investor based on the New Market Tax Credits which would have provided the Project with $17,000,000.00 worth of financing and from that, $5,569,200.00 in immediate equity upon the closing of the deal which was planned to occur on March 17, 2020.

19. Metanoia also hired consultants in 2017 and obtained approval from the National Park Service in 2019 for Historic Tax Credits related to the School and the Project. These amounts of tax credits also generated equity investor interest and commitments of approximately $6,354,450.00.

20. Metanoia also entered into a lease for an anchor tenant in the completed Project, the Allegro School of Music. The Allegro School of music was to provide a $4,000,000 initial contribution to the project and pay rent to the project on an ongoing basis.

21. Metanoia, through a subsidiary, and the City also entered into a lease agreement whereby a part of the School would be a performing arts center and artists studios, whereby the City would contribute $1,500,000.00 to the Project at the onset and the City would have a fifteen-year lease.

22. All of the above was done at significant expense to Metanoia.

23. The Project's construction and renovation was set to begin in early 2020 and initial demolition permits were ready to be picked up pending the securing of insurance coverage. A full closing of all related tax credit deals, investment deals and title changing hands to Metanoia was to occur in March of 2020.

24. Metanoia needed a builder's risk insurance policy for the Project. Metanoia was referred to a company that Trident used for most insurance, USI.

25. USI is a producer for XL. Upon information and belief, USI and XL have a producer agreement and relationship whereby USI is compensated for bringing business to XL. USI is a producer for XL rather than a broker for Metanoia in this instance. Prior to obtaining the Policy, Metanoia never had any business dealings with USI.

26. Metanoia applied for builder's risk insurance for the Project with USI. USI was told at the time that the City was the current owner of the School and that the City required itself to be a named insured under the builder's risk policy. USI was provided an email and letter from the City to this effect. **See letter and email attached as Exhibit 1 and incorporated by reference**.

27. XL made no due diligence requests or investigation as to the issuance of the Policy directly with Metanoia. XL never requested information or documents from Metanoia (or upon information and belief anyone) related to the School or the School's ownership until the claim on the Policy was made.

28. On January 2, 2020, XL provided Metanoia a quotation for the builder's risk policy through producer USI. **See quotation as Exhibit 2 and incorporated by reference.** The quotation estimated the insured value of the School at $21,400,000.00 and set the policy limit at

this monetary amount. In exchange for a premium in the amount of $98,870.00, XL agreed to issue the builder's risk policy. The quotation identifies USI as the producer.

29. Metanoia paid $98,870.00 and was issued a builder's risk policy by XL which named Metanoia and Trident as named insureds, policy number: US00097718CA20A ("Policy"). **See policy as Exhibit 3 and incorporated by reference**. Although it was requested and information was provided in writing requiring it, the City was not named as an insured on the face of the Policy. The Policy identifies USI as the producer.

30. A significant fire occurred at the School on February 8, 2020 which destroyed the School's theater and damaged other significant portions of the School.

31. Metanoia immediately made a claim on the Policy to XL.

32. The full closing of all related tax credit deals, investment deals and title changing hands to Metanoia could not occur in March of 2020 due to the fire and without first resolving the claim with XL as the fire caused damages that would cost approximately $2,662,039.00 to repair damage and the theater would need to be reconstructed in the approximate cost of $3,779,833.00.

33. Metanoia now had over a $6,000,000.00 fire damage loss that would destroy its ability to proceed with the Project and which could not proceed until Metanoia had a commitment from XL on what would be paid on the claim.

34. Metanoia hired its own public adjuster and estimators and sought to rapidly conclude the claim with XL so Metanoia could move forward with the Project.

35. However, XL embarked on a crusade to delay, hinder, obfuscate and do anything to not pay a fair amount on the claim for its own benefit, all in violation of S.C. Code Ann. §38-59-20 and other provisions of South Carolina law.

36. As of this filing, Metanoia is still "in the loss" without any final resolution to the claim and therefore any deadlines in the Policy are tolled.

37. XL, without notice to Metanoia, apparently rescinded and/or terminated the Policy after the fire and partially returned the premium paid to USI, but Metanoia never received written notice or confirmation of this recission and/or termination and did not receive repayment of the partially returned premium until the fall of 2020.

38. XL has acted in bad faith to its insured and the Project cannot proceed without XL paying a fair amount on the claim and for replacement cost coverage, which XL has refused.

39. Metanoia is entitled to replacement cost coverage because it wants to replace and will replace, is lined up to replace and is about to begin repairs. XL has wrongfully refused to provide replacement cost coverage or even a discussion of the amounts that would be due because it is, in bad faith, taking a bad faith position that Metanoia has to first replace the damage and the theatre at its own costs before XL will even consider what amounts Metanoia should receive as replacement cost coverage. Furthermore, XL is taking the position that Metanoia cannot obtain replacement cost value because of an unclear insurable interest and thus is stuck with actual cash value which XL has unilaterally determined. This position does not comport with the Policy, the law, industry standard or practices.

40. XL has not properly estimated replacement cost value and has refused to have the discussion on replacement cost value with Metanoia.

41. The prior actual repair and replacement of the damaged components is not required under the Policy as a pre-condition to replacement cost value coverage or determining what that value would be and what would be paid.

42. Metanoia cannot even consider replacing the damage because it has no idea of what, if any, costs will be reimbursed by XL. The work would be done on the hope and prayer that it would be reimbursed. This is not feasible and will result in Metanoia ceasing to exist.

43. XL has effectively eliminated and erased the replacement cost value coverage from the Policy it sold to Metanoia.

44. This is further evidenced by XL stating that the replacement of the whole theatre would cost $269,381.00 (which is completely impossible), as XL did not even estimate such.

45. XL has questioned the extent of Metanoia's insurable interest despite Metanoia having all insurable interest in the Project or School. XL has done so at the onset of the claim and continues to do so until today in order to avoid payment on the claim.

46. If Metanoia were to have less than all of the insurable interest in the Project or School, the City has the remainder and should be recognized as an additional named insured under the Policy as it is an "owner" and the Trident/Metanoia contract requires the owner to be a named insured for builder's risk.

47. XL is questioning the extent of the insurable interest in an effort to limit Metanoia to the actual cash value of the policy and to preclude Metanoia from obtaining replacement cost value. Furthermore, XL has increasingly equated actual cash value to be based on cash receipts on expenses related to the School pre-fire and threatened Metanoia with a clawback of funds when Metanoia requested the appraisal process in the Policy which allows a process for agreement when the insurer and insured have two varying appraisals on the Fair Market Value of a property.

48. Furthermore, the Policy should be reformed to actually place the City as a named insured due to the City's requirement and the knowledge of producer USI and XL, with such knowledge imputed to XL.

49. XL should be liable for all losses to Metanoia stemming from XL's failure to pay insurance benefits to Metanoia, which is significant.

**FOR A FIRST CAUSE OF ACTION**
**INSURANCE BAD FAITH**
*Against XL*

50. All of the above paragraphs are repeated and realleged as if they were repeated here verbatim.

51. Under South Carolina law, liability of XL for insurance bad faith is not dependent on a breach of an express contractual provision, but derives from breach of an implied duty of good faith and fair dealing in the performance of the obligations undertaken by the insurer for the insured.

52. XL issued the mutually binding Policy to Metanoia with $21,400,000.00 policy limit.

53. XL has refused to pay all benefits due under the Policy and has furthermore acted in bad faith by not even engaging in the discussion or evaluation of replacement cost coverage. XL has embarked on a crusade to cram Metanoia down on its claim and to eliminate any prospect of replacement cost coverage. XL has refused to even engage in math to value the claim and therefore has prevented Metanoia from knowing what XL will pay on the replacement cost value.

54. XL continuously directed its adjusters and estimators to reduce the scope of work needed to afford Metanoia proper adjustment of this claim.

55. XL did not even estimate or provide Metanoia the estimate to properly reconstruct the theatre which was destroyed by the fire.

56. XL's refusal resulted from XL's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising under the Policy.

57. The actions of XL have caused significant proximately caused damage to Metanoia and the Project to include without limitation: the loss of significant expenses and sunk costs in the Project; the loss of tax credits and tax credit investments; the loss of financing; the loss of pledged amounts for the Project; the loss of leases; attorney's fees and costs; attorney fees pursuant to S.C. Code Ann. §38-59-40; delay damages; higher construction costs; consequential damages; and punitive damages; all in an amount to be proven at trial.

## FOR A SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
### *Against XL*

58. All of the above paragraphs are repeated and realleged as if they were repeated here verbatim.

59. XL issued the contract of insurance (Policy) to Metanoia in exchange for a significant premium which was a valid and binding contract.

60. XL drafted the Policy and any and all ambiguities shall be construed against XL.

61. XL has breached the terms of the Policy by: 1) not paying Metanoia or the City all sums that they are owed to include replacement cost value; 2) by refusing to even discuss available sums it would pay for replacement cost value until Metanoia pays for all damage and rebuilding out of its own pocket; 3) by not recognizing the City as an insured; and 4) by limiting Metanoia to fair market value despite Metanoia wanting to replace, wishing to replace, being lined-up and prepared to replace and about to begin repairs.

62. XL is liable to Metanoia in an amount to be proven but which includes all sums for replacement cost value, consequential damages, attorney's fees and costs.

## FOR A THIRD CAUSE OF ACTION
## DECLARATORY JUDGMENT ACTION
### *Against XL and USI*

63. All of the above paragraphs are repeated and realleged as if they were repeated here verbatim.

64. The Parties have an interest under a contract for insurance (Policy) and there is an actual case and controversy between the Parties under the Policy.

65. The Plaintiffs seek the District Court to declare the rights and other legal relations of the interested Parties.

66. The Plaintiffs seek a declaration and Order from the Court to include, without limitation the following:

   a. That Metanoia is still "in the loss" without a final determination of its claim and therefore, any time limitations in the Policy to commence or complete repairs is tolled;
   b. That Metanoia is still "in the loss" without a final determination of its claim and therefore, any time limitations in the Policy to commence or complete repairs is tolled because XL has not engaged in any discussion or adjustment of Metanoia's replacement cost value to date;
   c. That USI is an agent/producer of XL under the facts of this case and the knowledge of USI is imputed to XL;
   d. That the City is an additional insured under the Policy language based on its ownership of the School at the time of the fire and the contract between Metanoia and Trident which required the owner to be an insured under the builder's risk policy;
   e. That Metanoia is entitled to replacement cost value to repair and replace the fire damage and to rebuild the theatre, that XL must engage in good faith valuation of the replacement cost value and provide the same to Metanoia so Metanoia can replace;
   f. Such other and further relief that is necessary for Metanoia to obtain good faith from XL to be able to repair and replace the damaged components to see this Project through for the benefit of the community.

**FOR A FOURTH CAUSE OF ACTION**
**REFORMATION OF POLICY**
*Against XL and USI*

67. All of the above paragraphs are repeated and realleged as if they were repeated here verbatim.

68. It is the position of Metanoia and the City that the City is an Additional Insured under the Policy based on the language of the Policy at Item 2 as the City was the owner at the time of the fire and the contract between Metanoia and Trident required all owners to be named as insureds.

69. However, in the alternative, the Policy should be reformed to add the City as a named insured.

70. USI was provided information and documents requiring the City to be a named insured.

71. The City was not ultimately named as an insured on the Policy despite the requirement of the City.

72. The omission of the City as an insured was either by mutual mistake or a unilateral mistake of the Defendants under circumstances which warrant the reformation of the Policy to reflect the City as an insured under South Carolina law.

73. XL is now claiming that Metanoia has a limited insurable interest in the School and using this argument to limit Metanoia's recovery on the claim.

74. The Plaintiffs seek the intervention of equity to reform the Policy to include the City as an insured.

**FOR A FIFTH CAUSE OF ACTION**
**NEGLIGENCE / GROSS NEGLIGENCE**
*Against USI*

75. All of the above paragraphs are repeated and realleged as if they were repeated here verbatim.

76. Under the facts and circumstances of this case, and as a question of fact, USI is believed to be an agent/producer of XL.

77. In the alternative, if USI is determined not to be an agent/producer of XL, then USI was negligent and breached its duties to Metanoia and the City which has proximately caused damages to Metanoia and the City.

78. If USI is determined to be a broker to Metanoia, USI owed a duty of care to understanding the ownership relationship of Metanoia and the City with respect to the School; to read and understand the requirements of Metanoia and the City with respect to the City being an insured under the Policy; to convey accurate and truthful information to XL as to the coverages afforded to Metanoia on the School; to obtain coverage from XL that met the requirements of Metanoia and the City including but not limited to ensuring the City was an insured.

79. USI breached these duties which have proximately caused damages as XL is taking the positions to include: 1) that Metanoia holds questionable insurable interest or limited insurable interest and therefore is stuck with actual cash value; 2) that the City is not an insured and therefore Metanoia is stuck with actual cash value; and 3) that USI misrepresented the ownership of the School to XL.

80. Had USI made the City an insured and accurately conveyed information to XL, there would be no question of the extent of the insurable interest and long ago, this claim would have been resolved and the Project moving forward.

81. These breaches by USI have significantly damaged Metanoia in an amount to be proven at trial, plus punitive damages, attorney's fees, and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment to be entered in their favor on all claims and that they be awarded judgment, actual damages, special damages, consequential damages, punitive damages, attorney's fees, costs, pre-judgment interest, the declaratory relief sought and reformation of the Policy and for any such other further relief as the Court may deem just and proper.

Respectfully submitted,

s/Jamie A. Khan
Jamie A. Khan, Fed. Bar #10083
Clayton B. McCullough, Fed. Bar #7120
McCULLOUGH KHAN, LLC
359 King Street, Suite 200
Charleston, SC 29401
(843) 937-0400
(843) 937-0706 (fax)
Jamie@mklawsc.com

Mark C. Joye, Esq., Fed. Bar #5312
JOYE LAW FIRM, LLP
5861 Rivers Ave.
N. Charleston, SC 29406
(843) 888-8888
(843) 529-9180 (fax)
markjoye@joyelawfirm.com

**ATTORNEYS FOR METANOIA**

J. Brady Hair, Esq., Fed Bar #5424
Derk Van Raalte, Esq., Fed Bar #6508
LAW OFFFICE OF J. BRADY HAIR
Post Office Box 61896
North Charleston, SC 29419
(843) 572-8700
Brady@bradyhair.com

**ATTORNEY FOR THE CITY OF NORTH CHARLESTON**

April 30, 2021
Charleston, South Carolina